Madden, Judge,
delivered the opinion of the .court:
Plaintiff is a public :corporation set up under the laws of Arkansas for the protection of lands within plaintiff’s district in:that state from inundation by the flood waters of. the.Mississippi River. Plaintiff was at the time here relevant authorized to raise money by taxation and by issuing bonds, ' '
. Under the Flood Control Act of 1928 (45 Stat. 534), the Federal Government undertook the entire cost of construction, reconstruction, enlargement and replacement of levees to conform to the Jadwin plan, of flood control. Local authorities, such as plaintiff, were required by this act to provide , the rights-of-way for the foundations of the levees and:for the borrow pits for earth to be removed and built into the levées. In 1928, plaintiff entered into the assurance . required by the Flood Control Act, to provide these /rights-of-way.
The Jadwin plan contemplated the construction of the levees over a period of ten years, beginning in 1929, and plaintiff planned to acquire the rights-of-way, as needed, over, this period. When the National Industrial Recovery Act was passed on June 16, 1933, the United States Engineers, yd10 had charge of levee building, decided to accelerate the levee-building program, in order to further reemployment and relieve . economic depression. Plaintiff, even, before this change of plans, had intended to borrow *355 money.to .perform its part of the flood-control program. On September 5, 1933, it applied for a loan under Title II of the .National Industrial Recovery Act, under which it could borrow money at a low rate--o-i\ interest and, -in addition, could obtain a grant of 30 percent of certain of its expenditures.
The application was approved in the amount of $552,000, and on April 17, 1934, plaintiff and the Government entered into a loan agreement, pertinent parts of which are quoted in Findings 7 and 8.. In the agreement the Government promised to make a grant to plaintiff, after completion of the project, “of not to exceed 30 percent of the cost of the labor and materials employed upon the Project as herein described, the proceeds from the the sale of bonds to be used by the Borrower for providing rights-of-way for foundations, for levees along the west bank', of the Mississippi River from the Missouri-Arkansas State line to the mouth of the St. Francis River, for borrow pits for material composing the levees, providing local drainage, maintenance.of the levees, paying for damages to property occasioned by building the levees, removing houses, and patrolling and. guarding the levees during construction (herein called the ‘Project’) and for incidental purposes; * ‡ ❖ 5?
Plaintiffs borrowed only $451,000 under the arrangement. It used the money for the purposes specified and fulfilled its part of the agreement. It then made a requisition for the grant of 30 percent promised in the agreement, including as a cost of “materials” the amount which it had paid out in purchasing land which was to be excavated by the United States Engineers to obtain earth with which to build the levees. The amount spent for this purpose was about $100,000, one-fourth of it having been spent before the passage of the National Industrial Recovery Act and the balance thereafter. The defendant made a grant to plaintiff of ■ $7,324.3-4, which was 30 percent of its expenditures for labor and materials, not including the cost of these borrow-pit lands. The defendant refused the 30 percent grant as to the cost of the borrow-pit land on the *356 ground 'that' the earth, from the land was not “employed” upon plaintiff’s “project.”
We think the defendant’s refusal was correct. Plaintiff’s “project” for which it borrowed the money was an-unusual one. Plaintiff was not to use the borrowed money to build levees. It was to use it to fulfill' its prior commitment to furnish rights-of-way for the location of'the levees, and for the removal'of earth to be put into the levees, which levees were to be built by the United States Engineers, and to perform certain work of maintenance, drainage, and inspection. As to the rights-of-way for borrow pits, as well as to the rights-of-way for the location of the levees, plaintiff’s project was merely to acquire them and pay for them. Plaintiff did not in any sense “employ” the earth which made up the land which it bought, in buying the land. It may have employed “labor,” in the way of surveyors, title, searchers, and appraisers. It is hard to imagine any materials which may have been used, except possibly boundary markers. For such labor and materials it presumably received its grant. But it was not entitled to a grant for materials which were intended to be used by another person, the Government, through the United States Engineers, in the carrying out of that person’s project, the building of the levees.
The defendant’s resident engineer approved plaintiff’s method of keeping records in which it apportioned the cost of land bought (some of which was for the site of the levee, and some for borrow pits) to “foundation,” and “material”, respectively, in the proportion in which the land was to be used' for those purposes. Plaintiff urges that that approval was a contemporary construction of the contract to the effect that borrow-pit land was “material.” We think' that this sanction of an orderly method of keeping accounts and preserving information as to the items of cost entering into the levee as it would be finally constructed did not commit even the defendant’s resident engineer to plaintiff’s interpretation of its contract. And even if the resident engineer had so interpreted it, it would not bind the defendant, plaintiff’s conduct in the performance of its contract not having been affected by the engineer’s misinterpretation.
*357 The Government contends that even if the plaintiff’s project had included .the building of ,the levees, the post of the earth in place before it was removed to the levee would not have been a cost of “material” employed upon the project, because the earth in place-is land and not “material” •within the meaning of the agreement. Our impression-'is that this contention is unsound, but it is not necessary to decide the question. Neither is it necessary to decide whether the money expended by plaintiff for borrow-pit lands before the passage of the National Industrial Recovery Act, or the interest paid to vendors'of the land on the purchase price, could have been properly included in the grant base, if we had taken a different view of the question of what was plaintiff’s project!
Plaintiff is not entitled to recover. The petition is dismissed. It is so ordered.
Jones, Judge; Whitakek, Judge; Littleton, Judge; and Whaley, Chief Justice, concur. ;